LOUISVILLE GERMAN BUILDING & LOAN ASSN. *v.* JOHN H. WISSING. SAME *v.* JOSEPH DUES.

[Abstract Kentucky Law Reporter, Vol. 4—443.]

**Force of By-Laws of Building & Loan Association.**

When a building and loan association has by by-law provided for the withdrawal of its members and fixed the portion or share to which a withdrawing member should be entitled upon his withdrawal, the repeal of such by-law in so far as it provided the basis of such settlements was inoperative and void so far as it released the association from its obligation to take back or purchase the stock of withdrawing members, becoming members after the adoption of said by-law.

**Rights of Withdrawing Members of a Building and Loan Association.**

Where the right to withdraw at any time upon terms that are reasonable and just is secured to members of a building and loan association by the organic law of the association, and such terms have been once prescribed and fixed, upon the faith of which, it may be, persons became members, the association can not subsequently take away the rights of such members to withdraw and take the settlement provided.

APPEAL FROM LOUISVILLE CHANCERY COURT.

November 28, 1882.

OPINION BY JUDGE LEWIS:

As the questions involved in these two cases are the same they will, in accordance with the agreement of counsel, be heard together, and this opinion shall apply to both.

By the terms of the articles of incorporation appellant, The German Building & Loan Association, organized February, 1872, was required to make provision for the withdrawal of its members and to fix the portion or share to which each should be entitled upon his withdrawal. By-laws for the government of the association were in pursuance of the articles of incorporation and immediately after the organization adopted. Amongst other provisions thereof are the following:

1. Shareholders may retire from the association in the first year of its existence provided they have received no loan and have given due notice to the board of administrators. Such notice must be in writing. The retiring member shall receive the amount of his payments after deducting his portion of losses and costs and payments due and unpaid for.

2. After the first year each retiring member is entitled to the full amount of his payments with six per cent. interest subject to the various deductions provided for above.

In 1874 an additional by-law was adopted providing for the payment by the association of one-eighth per cent. of the net earnings of each year to such shareholder who might offer his shares to the association. In February, 1879, the above quoted by-laws of 1872, as well as the one just referred to, adopted in 1874, were repealed, and in lieu thereof it was provided substantially that the association should in no case be bound to take back or purchase from its members any of their shares of stock at any price whatever, nor should it be bound when any of its stock should be offered it by any of its members to accept the same, or to pay therefor the sums actually paid in therefor with or without interest, or with or without any of the actual or supposed profits, but that in all cases it should be optional with the board of directors to take back or purchase such stock as may be offered and at such prices and values as the said board may deem to be to the best interest of the association.

In 1873, about one year after the organization of the association and the adoption of the original by-laws, appellees became members and so continued until April, 1879, when they each gave or attempted to give the required notice of their determination to withdraw and demanded the return to them of the amounts of payments respec-

tively made by them to the association and interest thereon at six per cent., together with their respective pro rata shares of the profits or net earnings. The association by its officers having refused to pay to appellees the amounts, etc., demanded, or any part thereof, they each brought an action in the Louisville chancery court to recover the same. And on final hearing the chancellor rendered judgment in favor of the plaintiff in each case for the amount paid on his subscription of stock, being monthly payments from the organization of the association together with interest at the rate of six per cent. per annum from the date of each payment, but refused to render judgment for any part of the net earnings of the association. From the judgment in each case an appeal and cross-appeal are prosecuted. As the association was bound by the articles of incorporation to provide for the withdrawal of its members and to fix the portion or share to which each should be entitled upon his withdrawal and in pursuance thereof such provision was made in the by-laws first adopted. We are of opinion that the repeal or attempt in February, 1879, to repeal that provision was inoperative and void so far as it released the association from its obligation to take back or purchase at any price whatever the stock of withdrawing members. The rights to withdraw at any time upon terms that are reasonable and just are secured by the organic law to each member, and such terms once having been prescribed and fixed, upon the faith of which it may be appellees became members, could not subsequently be displaced by other terms so arbitrary and unjust as to practically take away the right of withdrawal. By the terms of the by-laws first adopted, the withdrawing member is entitled to the amounts of his payments with six per cent. interest thereon, subject to a deduction of his portion of the legal costs and payments due and unpaid by him. It does not appear that the return to appellees of the amounts actually paid by them upon their subscription of stock and the legal rate of interest thereon is unreasonable or unjust. It is not shown that the association is insolvent nor is there any proceeding to wind up its affairs and distribute its assets among all the members. On the contrary, the association is still in existence and in a solvent and apparently prosperous condition. Under such circumstances, appellees are clearly entitled to a repayment of the full amount paid by them and interest from the date of each payment at the legal rate. We think the notices attempted to be given by the appellees are, under the circumstances,

sufficient. In addition to the principal sums paid by the appellees and interest thereon, they seek to recover also their pro rata share of alleged net savings and profits. The resolution providing for the payment of one-eighth per cent. of the net earnings was adopted in 1874, two years after the organization of the association, and after appellees became members. And in February, 1879, before they gave notice of their intention to withdraw, or in the language of the resolution "offered their shares of stock to the society," the resolution was repealed. As the record stands it does not satisfactorily appear that there were any net earnings or profits at the time appellees brought their actions. It is true they filed with their petitions copies of annual reports made to the association by its proper officers, which upon the face show profits. But it is manifest that, as the greater part of the property of the association consists of choses-in-action, its financial condition must depend upon the actual value of its notes and bonds and what can be realized therefrom. It seems that the principal source of profits is premiums given or bid upon loans in the business, and it should be made to appear how much of said premiums have been, and can be collected. But appellees made no effort to show further than the copies of reports exhibited, whether in fact the association has made any profits, much less the precise amount thereof. Besides, the resolution referred to was not necessarily or imperatively required by the articles of incorporation, and the repeal of it, for anything to the contrary shown by the record may have been demanded by the best interests of the society, of which appellees were at the time members. We do not think the chancellor was authorized to disregard and annul the action of the association in respect thereto, especially as great injustice might thereby be done the remaining members. We do not, therefore, think that the chancellor erred in refusing to give judgment for the net earnings or profits sought by appellees.

Wherefore the judgment in each case is *affirmed* on the appeal and cross-appeal.

*P. A. Gaertner,* for appellant.

*J. L. Clemens,* for appellees.